Good morning. Good morning. May it please the court, Joe Seguenza for petitioner. In this immigration appeal this morning, your honor, the issues presented are whether petitioner has met her burden in establishing ineffective assistance of former counsel in failing to record her notice of individual hearing at which she failed to appear. And whether this claimed ineffective assistance amounted to exceptional circumstances warranting a reopening of the case. And thirdly, whether a claimed inconsistency on a collateral matter could serve as the basis for the IJ's finding denying the motion to reopen based on a failure to receive notice of hearing. It's interesting to note, your honor, as you pointed out in the brief, that when former counsel filed his motion to withdraw, it was denied without prejudice. And it was incumbent upon the attorney to appear at the hearing to renew his motion if he chose to do so. The ineffective assistance of counsel petitioner asserts is twofold. Number one, former counsel failed to show at the hearing to renew his motion and to explain the circumstances concerning any potential conflict of interest. Can I ask you about what I find to be a difficult issue here? On the one hand, there's a fact to be found,  and so the IJ and the BIA found the fact based on the rebuttal letter from the former attorney saying, here was my cover letter. I gave her the information about the hearing. And then he also looked at, he made a credibility determination based on inconsistencies, as he saw it in her various applications. And so he found the fact, and arguably there's a fact, why was that, why don't we have to uphold that fact based on substantial evidence? And then I have a follow-up question after you answer that one. Your Honor, petitioner would submit that the IJ, in her ruling, essentially found the prior attorney more credible than the petitioner based on this claimed inconsistency. But there's a fact in the record, which is the rebuttal letter of the attorney says, I provided this information to your client, Ms. Coward. And isn't that substantial evidence? So we would say, well, we might have come out a different way, but there's substantial evidence at least supporting the IJ's determination. We would submit, Your Honor, that the IJ improperly found petitioner adversely credible on a collateral matter and use that as a basis to conclude that she was properly reported. What do you mean collateral matter? A collateral matter in the sense that the initial application in the visa petition? Yes, Your Honor. That was prior to the mix. That wasn't the basis for it. Well, she seemed to have used that as a basis to decide that former counsel was more credible, if you will, than petitioner. But why is it collateral? And what does that mean? I mean, it's a label, but what does it mean? Here we've got a pretty glaring discrepancy between the initial application and the visa petition as to who's married to whom. Well, petitioner would assert that that raises an issue that goes to the ultimate relief that petitioner is requesting adjustment of status based on a claimed marriage. Why doesn't it also go to credibility? I mean, we've got her claiming various differences in terms of who her husband is or isn't. Certainly it does. However, what the IJ should have done in this case was to reopen the case, have the petitioner come to court, try to explain the claim. Could have done, but didn't. And that's the question, whether there was a mistake, a cognizable error in failing to do that. And as Judge Ikuda says, isn't there sufficient information in the record to sustain the negative credibility of finding? Especially in a motion to reopen, that's a lot different than your basic first time around. Granted, petitioner understands that the standard is exceptional circumstances. However, given the petitioner's affidavit that she never received notice of the hearing and subsequent attorney's declaration in the motion to reopen that when the file was transferred from former counsel didn't contain it. But we have a finding. And why is it clearly erroneous? I mean, there is information in the record that would support the finding. Is there not? Well, the IJ in her decision concluded that reopening was discretionary, which petitioner would agree to. However, there was an abuse of discretion, because, Your Honor, there was an issue as to credibility here between the former attorney claiming that he had provided notice of hearing to the petitioner and petitioner's sworn declaration in her motion to reopen. OK, that kind of goes to the heart of it. If there is a potential issue of credibility, does that need to be resolved in an in-person hearing? Or is there some case that says that? Usually, these motions to reopen are decided on the papers as to whether you've raised enough of a big problem that has them reopen, which they don't too often, as you know. So you're suggesting almost, I think, what might be a new rule, which would be you'd have to have an in-person hearing. Please turn off your cell phone. Thank you. You'd have to have an in-person hearing every time there was a credibility dispute. And that would be a new rule, I believe. Granted, excuse me, granted, petitioner would concur with the court that motions to reopen are basically decided on the pleadings and not with an in-person credibility hearing. But here, the credibility issue is so crucial to respondents' ultimate relief here. She would have faced a bar of several years to return to the United States. And it's interesting also to note, Your Honor, that it appears that the IJ had inferred that perhaps there might have been a frivolous asylum application filing based on this claim of inconsistency regarding the marriage. That's a drastic, drastic consequence to a petitioner that would warrant. There was no finding to that effect. No, there was none. But the petitioner would assert that. What is the story on the husband? I mean, it wasn't, there was never any sort of explanation offered then when that was the basis, correct? That's correct. So we don't know which husband or wrong name or. Exactly. And it's also interesting to note that the G-325, the biographic information form, is not a sworn signing. It's not. But it was signed by her. I mean, you said in your brief that her signature didn't appear, but it was signed in the record. She did sign the G-325. Yes, she did. My problem is, I mean, we're looking at a motion to reopen or a denial, and we're looking at whether the action was, I think, arbitrary, irrational, or contrary to law. And I'm having trouble saying, well, why is it arbitrary or irrational to consider that the key documents of her applications are inconsistent, and using that as part of the basis for the IJ's determination? Firstly, Your Honor, the I-130, as one of the documents upon which the IJ based her adverse credibility decision, was not something generated by Petitioner. It was generated by her second husband. But does that matter when she signed it and said she had no other husband, that that was her? Well, I mean, you're saying it's her second husband, but she says that was her only husband, at least in that form. Right, well, the I-130, it's my understanding that the I-130 was submitted by her second husband. But it wasn't, as far as I can tell from the record, it was accompanied by a biographic information document, the 325A, and that was signed by her indicating that she had no former husbands. Moreover, her claim is largely derivative of what happened to her former husband, whom she says she was not married to. Yes, Your Honor, Petitioner understands that, and that does present a claimed material inconsistency. However, due process would require, we would think, that given these exceptional circumstances, that perhaps reopening is warranted to explore that inconsistency and give Petitioner a reasonable opportunity, a due process opportunity, to explain away that inconsistency. Do you want to save your remaining time? If I may. Good morning. May it please the Court. I'm Richard Zampardino. I'm here on behalf of the Respondent. This case is about discretion, and the abuse of discretion. The Board did not abuse its discretion by affirming the IJ's denial of the motion. Petitioner has conceded in her opening brief at page 10 that this is a matter of, the standard of review  Petitioner has conceded that the IJ's denial of the motion Petitioner also conceded to the Board at record page 85 that it was within the Board's discretion on reopening. Discretion takes it out of this, it isn't in the sense of a Taylor categorical approach where we can only look at certain documents. Once you get into discretion, the whole record opens up to the agency about deciding which way to go in the case. So we would quarrel with Petitioner's suggestion that the Board or the immigration judge couldn't look at Petitioner's immigration asylum application. Let me ask you this, and this is what's troubling to me about another aspect that's troubling about this case. We have cases where on a motion to reopen, the petitioner provides an affidavit giving some explanation as to why there are extraordinary circumstances. And in cases where the BIA has then looked at that affidavit and said, eh, we don't think it's true, we've said, you can't do that on a motion to reopen. On a motion to reopen, the BIA has to accept the affidavit as true unless it's inherently unbelievable, I think is what our standard is. So here, this cowerer submits an affidavit saying, I didn't get it. And the IJ or the BIA is choosing between that affidavit and the letter of the attorney and also making a credibility determination not based solely on her affidavit for purposes of the motion to reopen but also on these other documents in the record. How do you distinguish our cases saying the BIA may not make adverse credibility determinations on an affidavit in a motion to reopen? Well, Your Honor, first of all, we in the sense of the asylum claims. It was essentially where the board recognizes a glaring discrepancy inconsistent with what's in the record as it's trying to make a discretionary finding. But also, when the board receives the affidavit, they also have evidence that states the exact opposite, that states that, yes, you were told the exact date when you should come to immigration court and it was incumbent on petitioners still to come. Now, granted, petitioner's counsel did not appear as well, but it's still incumbent on petitioner to have come to immigration court that day. So we think that the distinction is, in this case, you have two opposite rulings or opposite submissions. And the board isn't necessarily required to decide, all right, this petitioner has generated an issue that automatically warrants a going back. The board is able to, within its discretion, to take a look at the two competing documents and try and decide, did the immigration judge abuse her discretion, whatever she ruled, that the affidavits submitted to her by petitioner were not as, did not have as much veracity to them compared to what were submitted by her former counsel. So are you saying if there's evidence in the record that contradicts whatever is in the affidavit that's submitted by the petitioner on a motion to reopen, then the BIA should be entitled to choose  If there's hard evidence in the record that would call the affidavit into account, into question, we think that's a reasonable position to take because the petitioner has filed an affidavit, but at the same time, within the record, there's already evidence that undercuts that. So it would, in a sense, handcuff the board by allowing a petitioner just to file any affidavit that said whatever, as long as it contradicted what was in the record. The board can't blind itself to the other aspects of the record. Is there any case in which we've helped? I'm not aware of one, Your Honor. At the time- So it is a little odd, the lawyer turns his file over to the other lawyer and the critical letter which contains the notice isn't in there, right? Well, but says the lawyer. Says the lawyer. Is what the lawyer says. And at the time- And then they say to lawyer, then lawyer number one says, well, I have this letter, signed letter in my file that I sent to her. And so then that- And I have the certified receipt back from- Pardon me? And I have the certified receipt back- Right. That she signed for a few days later. Right. And that gets us into the substantial evidence test in terms of the fact-finding. What essentially petitioner is going to ask the court to require to do is to find that the evidence compels the conclusion that the first counsel made up the letter. There's no other way really around that, which we think is not necessarily within the substantial evidence test. We think that at the time the board ruled, and this is what we think is critical, the only documents the board had in front of it were affidavits from petitioner saying, I never knew what date. And it had the certified mail receipt and the letter from the first counsel saying, I informed you when the date was. The record showed the receipt of the cover letter giving the date. And it also showed, which essentially helped tip the scales, the discrepancy between the G325 and the asylum application. Don't we have to make that new rule that you said we haven't ruled on yet in order to come out your way? Because if we took her affidavit, if we said, BIA, you are not taking her affidavit as true, which we've said in other cases, in which case it seemed to me that the BIA was saying, well, if I took that affidavit as true, then there was probably, she complied with matter of lazada, there probably was ineffective assistance of counsel in extraordinary circumstances. So only if we agree that where there's rebuttal evidence, where there's other evidence than the BIA gets to choose, that we can come out your way. Isn't that right? Well, again, I'm actually not aware if there is case law that goes that way in the first place. I'm not sure it would be a new rule. I couldn't make the representation, Your Honor, on my feet now. But what the board is doing in the course of its discretion is simply trying to figure out which way to go in this matter. And they've got evidence that goes one way, they've got evidence that goes another way. They, we think within their discretion, didn't act irrationally by deciding that Petitioner's veracity was called into question by submitting an asylum application that was apparently not genuine. We think in that case, it takes it out of necessarily competing affidavits and more into trying to determine which way, whether or not it was irrational or arbitrary for the board to go the way it did, which gets it more into a discretionary finding. We'd also point out that Petitioner's first counsel, we would suggest, as we did in our reply brief, in our opening brief, that any action against Petitioner's first counsel is outside the scope of the record. But we would point out that any action that took place to say that, well, Petitioner's first counsel did somehow generate and gin up a letter, that all occurred prior to the board's decision in this case. That actually occurred the day Petitioner filed his brief with the board. There was no motion to remand filed by Petitioner with the board to tell them there's this new evidence you should take a look at. Any evidence submitted to the board while the appeal is pending is treated as a motion to remand. So they could have submitted that to the board and said, take a look at this. This buttresses my client's affidavit. In other words, they might have said, isn't it a little odd that the attorney in his other letter types out, you know, July 12, 2000, and in the second letter he puts, you know, 1 slash, you know, the form isn't the same. They could have raised those issues. They could have raised those issues and it was pending before the board. There was opportunity at the time. Even if you assume that the day they filed their brief they don't become aware of it, it takes some time, they still could have filed a motion to reopen with the board. They still haven't done that either. They still to this day have not filed anything to tell the board there were facts that you didn't see that might have adjusted your discretion, the way you were ruling on discretion. Well, but, you know, the petitioner is in a very difficult spot because if you don't get something, you're arguing against a negative. And that happens and we've seen case after case where immigration lawyers didn't give the petitioners, for example, notice of the final decision and then they couldn't appeal to this court. So while I hear your statement theoretically, what more could she have done? Well, in the actual motion to withdraw, it did indicate the first counsel represented to the court, to the immigration court, that she did know the hearing date and that she had promised to attend. When she receives that, she sees that in there and apparently it doesn't – it's almost a bit of a due diligence argument because she didn't actually take any steps to figure out, all right, I don't – I'm not getting along with my first counsel. He's filed this motion to withdraw. He's now informed the immigration court that I'm coming to court and I know what day it is. There's no indication that she has taken any steps at that point to try and generate a little self-help here until several months later. The petitioner never, not before the immigration judge and not before the board, never actually met the discrepancy of the asylum application and the G-325 application head on. The petitioner only said, well, you're quoting me out of context or those facts are irrelevant, but we, again, argue on a discretionary issue the entire record is relevant. Well, there was a hearing at which she was supposed to appear. Is that right? Yes, Your Honor. And her lawyer was supposed to appear also. Yes, Your Honor. The lawyer did not appear. Yes, Your Honor. She did not appear. Yes, Your Honor. Had she been told that she had to appear? The board's finding was that she had been told she had to appear. What explanation is there in the record for her failure to appear? For her failure to appear? Yes. Her own assertions that she did not know I think are the only representation she has. She also has said that Fisher's first counsel, again, made up the first letter informing her of the date she should have arrived. But she was noticed of the requirement that she appear at the hearing. Yes, Your Honor, because when she was represented by NIC my time is up. Does she say anywhere the lawyer told me not to appear? No, Your Honor. If I could just conclude, we would ask that the petition be denied. All right. Thank you. Thank you. You changed Mr. Seguin's time to a minute. We'll give you a minute for rebuttal. Thank you. Just briefly in addressing the Court's concerns to counsel, it's interesting to note in the record that in the motion to withdraw, as is usually done, there was no stated date or time of the hearing. And usually on the cover sheet, counsel will endeavor to put the date and time of the hearing. Petitioner had no idea that there was a date certain coming up for the hearing. In the record, petitioner had made several attempts with her husband to contact the attorney. Wasn't she notified that there was a hearing at which she had to attend? She was notified by certified mail, which she acknowledges receiving, of the motion to withdraw. But there's nothing in the motion that indicates when the hearing was supposed to have occurred. And petitioner naturally failed to appear on the scheduled date only because she had no frame of reference. So nobody says that she was notified prior to the motion to withdraw, correct? No. So it either would have been in connection with that, with the letter, or not at all. Exactly. The letter is the sole basis that petitioner claims she didn't receive notice of the hearing. Granted, notice to the attorney is generally notice to the client, but it's incumbent upon the attorney to, in turn, properly notify the client of the date and time of the hearing. I would submit that the case is not the case. Is her claim for asylum largely derivative on what happened to the person who she says is not her husband? I'm sorry, Your Honor. Is her claim for asylum, it's largely derivative on what happened to the person who may or may not have been her husband. Is that right? That's my understanding, yes. And we would submit that petitioner has made a prima facie showing for real. Thank you. Thank you. I thank both counsel for your arguments this morning. The case of Cower v. Holder is submitted.
judges: Trott, McKeown, Ikuta